The opinion of the Court was delivered by
Wardlaw, J.
The envelopes of the commissions mentioned in the first ground of appeal, have been exhibited to this Court, and a closer examination of them, than opportunity allowed on the circuit, shows that they are not exactly similar. Both envelopes are sealed with wax and directed to the proper clerk; upon each appear names of Commissioners, professedly written by themselves, and proper post marks.
Upon one, the names are written across the concealed adhesive matter, which, as well as the external wax, fastened the package; and in argument here, objection to this one has been withdrawn.
*218 Upon the other, adhesive matter and wax seals, yet unbroken, (the envelope having been cut open at the upper edge) are on the reverse, and the names of commissioners are written in one corner of the face, upon which the title of the case and direction to the clerk also appear. There is no appearance of unfairness, nor has there been a hint of suspicion that the envelope or the seals have been tampered with. The letter of the 95th rule of Court, which says, “ names of commissioners written by themselves across the seals,” is insisted on'for the plaintiffs.
The 49th and 50th rules had required the deposit of a commission in the post office by one of the commissioners, and a certificate of such deposit. To obviate the frequent objections which want of the certificate occasioned, the 9oth rule, repealing the others, substituted the names written as above mentioned, and the post mark for the deposit and certificate before required. All the requisitions of these rules were chiefly directory to the commissioners, intended to suggest to them, usually, persons beyond the jurisdiction of the Court, means for guarding against frauds, which may be practiced upon the depositions taken under the authority intrusted to them. So far as the requisitions-of the rule now of- force affect the discretion of the Court itself, a substantial compliance with them, accompanied by appearances of fairness, may serve; whilst the most exact adherence to them would not countervail evidences of fraud.
The names of commissioners must be “ written by themselves,” yet a commission from Australia would not be ordered to remain unopened until another one was sent to prove the handwriting of the commissioners; for who would prove the handwriting on the second one ? Until the contrary appeared, the handwriting would be presumed genuine. With like indulgence, pames written on a sealed envelope will be considered across the seals, until some reason arises for supposing that the seals have been broken.
*219 Manifestly, the names could not have been written on th wax. They should then, it is urged, have been written partly at one edge of tbe wax and partly at another, in a line which would have been across.it; but this would have been “written near the seals" and so a departure from the very words “ across the seals.” The use of wax is not forbidden, is rather suggested by the rule, and the same detached signature which in a deed would take character from the seal, so that by combination of the two a specialty would be created, may be well held to be close enough to authenticate •the seal of an envelope. «
It has been supposed that “ across the seals” meant to require such arrangement of the names, as would prevent breaking of the seals without disturbance of the names. It is, however, well known, that where skilful villany is exercised upon the fastenings of paper packages, simple expedients relied upon to expose its tricks, serve only to produce treacherous security and delusion. To the care and fidelity of the commissioners, and the vigilant integrity of the post office department the safe return of commissions, sent by mail, must be confided ; and when, as rarely happens, grounds for suspecting unfairness are presented, a literal compliance with directions may be demanded to prevent fraud. Bat when there has been a manifest effort to pursue a direction, and its end has been attained, tbe Court will not allow it to be turned to the defeat of a full and fair trial, by nice discrimination between degrees of formality, not plainly distinguished by material circumstances:
The prominence given' by the plaintiffs, in their argument here, to their first ground of appeal, must be our excuse for the attention we have bestowed on it, so disproportionate to its intrinsic importance.
Directing careful attention to the report, we group the other grounds of appeal..
Under the instructions which were given to the jury, the *220 verdict is their response that there was nothing in Enoch Tryon’s pecuniary ability, or in the circumstances which attended his escape, that required either for reparation of the plaintiffs’ loss, or for proper punishment of the sheriff, higher damages than the small sum which has been found for the plaintiffs; and further, that the ca? sa., of the plaintiffs’ was, before the render of the said Enoch Tryon, either withdrawn from the sheriff by the plaintiffs’ attorney, and not aftewards relodged, or -marked “wait orders,” and that order not after-wards countermanded. The Court does not perceive sufficient reason for disturbing the decision made by the proper Judges of fact upon matters properly submitted to them; and will therefore consider the facts, just enumerated, as established, if no controlling error in the instructions shall be detected in reference to any of them. It results that the sheriff did not at any time, between the render of the said Enoch Tryon and his escape, have in his hands a ca. sa., under which he could have arrested the said Enoch Tryon, if he had been lawfully at large : and of course that the sheriff had no ca. sa., which could operate as a detainer of the said Enoch Tryon when he was imprisoned by other process.
By what process, it is asked, was Enoch Tryon then held ? By the same process under which he was rendered in jail,— the original order for bail, — which, after the render, held him as at the same time it would have done if he had been arrested under it when the bail bond was given, and without giving bail had remained in jail all the intermediate time. Glover vs. Gomillion, 2 Rich. 554.
It has been supposed, that after judgment no bail bond could be given by a defendant whose bail had rendered him. If this be so, it is English common law, and does not affect this case; but the 14th section of the Sheriff’s- Act of 1889, (11 Stat. 29,) is probably large enough for giving the privilege of a new bail bond to a defendant rendered after judgment, as well as to one rendered before.
*221 Again, it has been urged, that a debtor imprisoned after judgment, must be held by final process; but at common law, final process against the body is a ca. sa. — taking the body under that is a satisfaction, and a plaintiff has an election to take or not to take this satisfaction, of which he cannot be deprived' by a render which bail choose to make. After judgment, a plaintiff’s proof of the'amount due to him. is easy; but until he charges in execution his debtor, who may be in prison, and so becomes subject to consequences, that may be unprofitable, of the election thus made, he cannot claim the advantages of an election never made, by saying, in case of an escape, that the imprisonment was under final process.
E. Tryon’s petition said, as the plaintiffs have repeated here, that he was held under ca. sa., and that, they think, the sheriff was bound to take notice of; but the sheriff was no party to that petition, or to the proceedings under it. It is not probable that he knew what it contained; and if he did know, nothing that E. Tryon himself could have done or said could have made his imprisonment a satisfaction of the plaintiffs, if they did not choose to charge him in execution ; only as a circumstance touching the question of fact whether the ca. ca. was in the hands of the sheriff" was the petition at all admissible, and in reference to that it was no estoppel of the sheriff.
The conclusion must be, that E. Tryon was confined under mesne process, and this appeal must fail unless error in some material instruction, not yet considered, has been shown.
The plaintiffs’ counsel have admitted, in argument here, that the opinion- was unimportant to this case, which their arguments required the judge to express on circuit, and which they have brought under review here, by their fifth ground of appeal, concerning the sheriff’s duty at each term, under the Act of 1847, and the Acts of which that is amendatory. The same admission might well have been made as *222 to the instructions which the third ground of appeal suggests should have been given. Whether then the sheriff’s return on the ca. sa. was good or was void, whether it was by relation to be referred to the Spring Term, 1855, or by lapse of time -became suitable to Fall Term, 1855, if it was made at the request of Mr. Caston, and made whert he withdrew the ca. sa. from the sheriff, it answered the use, which was made of it, as evidence upon the questions of fact, concerning the withdrawal and the order to wait, that were submitted to the jury. What appeared to have been written, and the time when- — September 20,1855 — were exhibited as circumstances from which inferences might be drawn. This Court intends to express no dissatisfaction with the opinions as 'to the return which were expressed on the circuit; but it does not feel the necessity of examining them carefully in this case.
The fact that the sheriff proved on oath before the clerk what professes to be a return of the ca. sa., was a strong circumstance (not conclusive, nor held on the circuit to be so,) tending to show that the paper passed out of the hands of the sheriff; and, if the withdrawal by Mr. Caston was found, confirming the inference raised by other circumstances, that Mr. Caston looked upon the return as a good one.
'In the proceedings against the bail, returnable to Fall Term, 1855, is seen reasobfor Mr. Caston’s requiring what he must have considered a return of non est inventus, which would be referred to Spring Term, 1855; and his desire to have recourse to the bail, rather than the body of Enoch Tryon, may have been a reason for his indorsing on the ca. sa. when Enoch Tryon returned, or was about .to return to the State, just' before Fall Term, 1855, the order to wait. This indorsement, if made before the return of the ca. sa., should properly have prevented that return, and required a different return, if one was demanded under the Act of 1847. The probability is that the indorsement was made after the return was written and the ca. sa. withdrawn *223 by Mr. Caston ; and made, either to quiet apprehensions, which the sheriff may have mistakenly entertained, of harm to come to him for not executing the ca. sa. on Enoch Tryon’s return, or to make sure of the sheriff's not interfering, by the arrest of E. Tryon, with Mr. Caston’s purpose of avoiding a barren satisfaction and preserving, the remedy against the bail. In his view the bail were already fixed, and their period of indulgence ex gratia had nearly expired.
After the render of E. Tryon, Mr. Caston may have unintentionally neglected to relodge the ca. sa., with the orders to wait countermanded; or he may not have adverted to the greater liability of the sheriff that would have been thereby imposed; or he may have purposely forborne, with a view to the preservation of a lien on the debtor’s goods and lands, or with a view to a more distant day in the past, which, it has been sometimes supposed, confinement under a bail writ would refer to, in respect to fraudulent assignments and preferences under the 7th sect, of the Act of 1788, (5 Stat. 79,) than confinement under a ca.'sa. would do. Even after Enoch Tryon was convicted of fraud in his schedule, these may have been thought good reasons for holding on .to the chance of taking under a ft. fa the property which was found to have been fraudulently assigned, whilst the body of the debtor was held under lawful imprisonment ; the chance of his relief under the Insolvent Acts was gone, no supersedeas was claimed for want of charging in execution, and the sheriff was urged to vigilance and severity.
The motion is dismissed.
O’Neall, Glover, and Munro, JJ., concurred.

Motion dismissed.